UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Gloria HICKS-HARRIS,<br>    Plaintiff | :<br>: |
|        v. | :   Civ. No. 3:03cv1406 (PCD) |
| | : |
| O'Donovan MURPHY and | : |
| Joseph TOMASELLO, | : |
|    Defendants | : |

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I.    Introduction**

Plaintiff, Gloria Hicks-Harris, a Judicial Marshal employed by the State of Connecticut, invokes this Court's jurisdiction under 28 U.S.C. §§1331, 1343(3) and 1367(a), and 42 U.S.C. §1983. She alleges that defendant O'Donovan Murphy was the Chief Judicial Marshal and defendant Joseph Tomasello was a Supervisor of Judicial Marshals in the New Haven Judicial District. At relevant times she describes herself as subject to their supervision. They are sued individually.

Defendants, allegedly acting under color of law and jointly, are described as depriving her as a female, of equal protection, provided by the Fourteenth Amendment, and causing her severe emotional distress from her working conditions and assignments. Defendants move for summary judgment on the basis that Plaintiff cannot prove adverse employment action, hostile work environment, or different treatment by reason of her gender. They also assert qualified immunity. For the reasons that follow, Defendants' motion for summary judgment [Doc. No. 27] is **granted**.

**II.   Background**

Defendants' Statement of Undisputed Facts, per Local Rule 56(a)(1), to the extent agreed

to by Plaintiff, recites commencement of employment in the office of the New Haven Sheriff in June 1988, and continuation in the Judicial Marshal's office on succession of that office by statute on December 1, 2000. She was, until March 27, 2001, assigned to a detention facility where Tomasello was a shift supervisor. Murphy, as Chief Judicial Marshal, assigned office personnel, including Plaintiff, to facilities and shifts.  The Union Avenue Detention facility was staffed by three shifts and operated twenty-four hours a day, seven days a week.  Weekend shifts were staffed by volunteers on a first come, first served basis.  From January to mid-March 2001, twenty Judicial Marshals were assigned to Union Avenue, of which two were African-American women, one of which Murphy attempted to have on duty per weekday shift for processing female detainees in the facility. Plaintiff was assigned to the four p.m. to midnight shift. On the return of Marshal Shephard from medical leave, she was assigned to that shift which she had worked before going on medical leave in 2000. Marshal Nelson was kept on the first shift, which she had been working from December 2000.  Plaintiff was moved to the third shift, midnight to eight a.m., per Murphy, as she had worked it on overtime and was experienced and familiar with other shift personnel. He believed that Plaintiff was available for that assignment. The new assignment was discussed by Murphy with Plaintiff on March 27, 2001, after which she left work claiming a stress headache. She claims discrimination in the assignment. Plaintiff's workers' compensation claim was denied. Another female marshal was reassigned to Union Avenue. When Plaintiff did return to work, in April, 2002, she was assigned to the 235 Church Street courthouse.

      The only difference in shift jobs at Union Avenue is that the pay for the eight a.m. to four p.m. shift was $5.00 per hour less than for the other shifts. Four posts were assigned for each shift, to which males, Caucasian, African-American and Hispanic, and females were

interchangeably assigned. Post assignments did not affect pay rates.

      Hearing that Plaintiff felt like getting a gun, Murphy discussed it with her, but took no action, believing the matter resolved. Neither defendant was involved in processing Plaintiff's medical claims. Tomasello was not involved in Plaintiff's March, 2001 reassignment, nor any discussion of shunting arrestees to particular bondsmen nor of Plaintiff's acquiring a gun.

      Plaintiff is a female African-American as are the two female marshals involved in the noted shift assignments. Murphy is an African-American male.

      Plaintiff asserts as different in their effect on her as opposed to male employees:
        (a) She was issued a disciplinary memo for wearing white socks.
        (b) A Murphy memo she took as directed at her concerning personal clothing.
        (c) Tomasello criticized her for wearing non-governmental outerwear.
        (d) Male marshals were not targeted for discipline or criticism as she was.
        (e) Criticism caused her to have health problems.
        (f) Murphy suggested she received payoffs from and favored certain bondsmen.
        (g) She was singularly held to strict duty performance.
        (h) Tomasello demeaned women's ability to perform the job.
        (i) She was the last to receive certain job training.
        (j) She was always supervised by a male.
        (k) Her working conditions were hostile and adverse.
        (l) Her request for her personnel file was not answered. It was allegedly lost.
        (m) Her lockup post constantly exposed her to male prisoners using the toilet.
        (n) She was denied a job assignment which another female vacated.

She has disclaimed any responsibility of either defendant for loss of her personnel file and has not pursued, and thus waived, any claim that either interfered with the processing of medical claims and any claim based on her midnight shift assignment which she did not work. As to the latter, though her complaint asserts the midnight shift reassignment was made knowing its detrimental effect on her health, she had no knowledge of any prior health problems making that shift a health problem. Further, she had worked that shift previously with no notation of any problem arising and her subsequent health complaint can hardly be attributed to the reassignment

since she left the job and did not work that shift. Except for denial of one position she has not shown that she applied for assignments or promotions, absent which no claim of discriminatory denial is valid. Kinsella v. Rumsfeld, 320 F.3d 706, 709 (2d Cir. 2003); Brown v Coach Stores, Inc., 163 F. 3d 706, 709 (2d Cir. 1998). Her claims pertain to the period from December 2000 to March 27, 2001. (See Complaint ¶ 7.)

**III.    Standard**

Rule 56 of the Federal Rules of Civil Procedure permits a summary judgment when the record reflects "no genuine issue as to any material fact . . . and the moving party is entitled to judgment as a matter of law."  Defendants' burden is to demonstrate that plaintiff has no evidence in support of one or more essential elements of her claim. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 158, 160, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). If movant succeeds, then the non-moving party must present evidence demonstrating a genuine issue of fact which if credited could reasonably result in a verdict for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); Marvel Characters, Inc. v. Simon, 310 F.3d 280, 285-86 (2d. Cir. 2002). This does not permit non-movant to rest on allegations of the complaint but requires evidence in support of specific facts that present a genuine issue of material fact. Id. at 249. A mere scintilla is not enough. Evidence in support of every element of the claim is required. Larkin v. Town of West Hartford, 891 F. Supp 719, 723 (D.Conn.), aff'd 101 F.3d 109 (2d Cir. 1996). The record is reviewed in a light most favorable to the non-movant including any ambiguities and inferences. Cargill, Inc. v. Charles Kowsky Res., Inc., 949 F. 2d 51 (2d Cir. 1991).

Plaintiff's claim is dependent on proof of a violation of a right, with respect to her employment, secured by federal law. Here she claims violation of her Fourteenth Amendment equal rights by defendants, individually. Feingold v. State of New York, 366 F.3d 138, 159 (2d Cir. 2004). Her less than precise complaint asserts adverse job actions and a hostile work environment. The evidence in the record on which the motion is to be decided is set forth in the parties' Local Rule 56 statements. (Pl.'s Mem. Opp. Mot. Summ. J. at 6.)

IV.  Discussion

Plaintiff has alluded to her gender (no complaint about her race is pursued), but there is no clear claim that she suffered any adverse action based thereon. At best her claim is treated as asserting individual discrimination, disparate treatment, i.e. adverse employment actions directed at her as opposed to others subject to defendants' supervision. Plaintiff's entitlement as a member of a protected class and job qualification are not questioned.

The first element to be considered is whether Plaintiff has shown an adverse action in the way of her employment. This is not a matter of occurrences in relation to her employment that are not to her liking or agreement, but must involve a materially adverse change in the terms and conditions of her employment. Id. at 152; Galabya v. New York City Bd. of Educ., 202 F.3d 636,, 640 (2d Cir. 2000). Among her claims are a refusal of training, but in her deposition she concedes extensive training and no request for training in or after 2001, and includes specifically training in operation of a prisoner van, which she received eventually though not immediately when she requested it. That claim will be disregarded as without factual and legal merit.

She also recites instances of criticism, a memo for wearing white socks, a memo against wearing personal clothing at work which "appeared to have been directed against" her, a memo

for wearing a non-departmental issued garment when she did not have the department's issued garment, an accusation of taking payoffs from and giving information to bondsmen, criticism for arriving late for work, comment on women's lesser work capability, the loss of her personnel record (for which she disclaimed responsibility on the part of either defendant), and post assignments. None of these are asserted to have resulted in any identifiable material negative impact on her working conditions.  None of the memos or criticism resulted in discipline. (Pl.'s Dep. at 24.)  At most they are portrayed as, to her, unpleasant, irritating, unwarranted and/or different from how comparable situations involving males were treated.  None is shown to have materially altered her job requirements, lost her any benefits, promotions, pay or advancements nor material job responsibility. Rather, they may have been inconvenient, disagreeable and/or not agreed to by her. See Wanamaker v. Columbian Rope Co., 108 F.3d 462, 466 (2d Cir. 1997).

Likewise, her claim of unpleasant posting is not supported by evidence other than her claim of being so posted, and that males were also assigned the same post, with no showing of other than her asserted unmeasured numerical discrepancy in her assignment there.  Notices of discipline and behavior memoranda are not adverse employment actions unless they result in a material adverse change in working conditions. Weeks v New York State Div. of Parole, 273 F. 3d 76, 86 (2d Cir. 2001). As a matter of fact and law, none of these constitute materially adverse employment actions and her assertions to the contrary do not create genuine issues of material fact which would support, singularly or cumulatively, a finding of disparate treatment to a degree required to prove unequal treatment which violated a right established by the Fourteenth Amendment. Plaintiff's reliance on Patrolman's Benevolent Ass'n v. City of New York, 310 F.3d 43 (2d Cir. 2002) is misplaced, as the lateral transfers there were concededly race-based,

subjecting the City's reasons therefor to strict scrutiny, and were shown to impact negatively and materially the terms and conditions of the transferees' employment.

Plaintiff claims that her treatment reflected a permeation of the workplace by a steady pattern of differing treatment which is required to be sufficiently severe or pervasive that altered the conditions of her employment and in turn constituted a hostile work environment. This is a variation of a 42 U.S.C. § 2000e, Title VII claim and requires proof of gender-based discriminatory conduct shown to be imputed to her employer. Richardson v. New York State Dept. of Corr. Servs., 180 F.3d 426, 436 (2d Cir. 1999). To prevail on that claim she was required to show that the incidents of which she complains, individually or cumulatively, were so "severe or pervasive to alter the conditions of" her employment, as seen by an objectively reasonable person. Id. Reflective of a minimal impact on her is the absence of any assertion of a complaint by her to any instance of asserted impropriety or their cumulative effect on her. Of dubious quality are claims of a memo citing her wearing white socks, personal non-uniform clothing, and non-departmental outer clothing. So also accusations of her being on the take from and proving information to bondsmen, holding her strictly to being at her assigned post, one reprimand for late arrival at work, Tomasaello's alleged negative view of women's ability to do the job, and quicker finding of fault for her minor job errors and being last to receive van operation training. Individually each of these complaints are extremely difficult, if not impossible, to find to be of such consequence as to meet the severity criteria required to constitute an alteration of the conditions of her employment as would permit a finding of a hostile work environment. Except for the Tomasello remark, none are tied to her gender, which is consistent with her deposition testimony that she was not sure of a gender motivation. (See

Plaintiff's Dep. at 61.)

Further, except for Tomasello's remarks–criticism of her failure to wear departmental outerwear, one criticism of her late arrival at work, and his quickness to criticize her for job errors–and Murphy's accusation of her relating to and taking payoffs from bondsmen when she bought a new car and issuance of a memo–not apparently addressed to her but which she saw as appearing to be directed to her about wearing personal clothing–the named defendants are not claimed to have been the source of nor condoned the conduct directed at her. The cumulative effect on her, except for the forgoing, cannot be said to have been caused by them or either of them. The noted specific conduct of each named defendant, in isolation or cumulatively, cannot be said to have had the severe quality required to create a hostile work environment. It was neither individually nor cumulatively frequent, severe, physically threatening or humiliating as opposed to being merely offensive, an unreasonable interference to Plaintiff's work nor productive of any psychological harm. See Harris v. Forklift Systems, 510 U.S. 17, 23, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993). While a bright-line border between what does and what does not constitute harassment to a degree sufficient to present a question of fact is impossible to draw, conduct on which Plaintiff bases her claims in this case is sufficiently far enough removed from that described in Torres v. Pisano, 116 F.3d 625, 631 (2d Cir. 1997), cited by Plaintiff, as to preclude a finding that a reasonable person could find it to be so discriminatorily harassing or pervasive to be deemed creative of a hostile working environment. See Deters v. LaFuente, 368 F.3d 185, 189 (2d Cir. 2004); Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 70 (2d Cir. 2000).

In addition, Plaintiff cites only incidents in which she was involved. She asserts generic

differences in how male deputies were treated in comparable circumstances but cites no instance in which a particular male deputy was treated differently from the way she was under comparable circumstances. In several comparable respects she disclaimed knowledge of conduct directed to male deputies. Nor does she allude to any comparable instance which involved any of the three female deputies and how they were treated.

      The claim fails for want of any direct evidence of discrimination on the basis of gender as the motivation other than the Tomasello remark which, alone, is far from sufficient to implicate him as gender biased in his conduct of which Plaintiff complains and it is not attributable to Murphy. What Plaintiff has shown are isolated instances directed at her with which she takes offense. All are minor in nature, mostly legitimately concerned with job considerations, with no gender motivation shown. For the reasons discussed herein, while the basis for a discriminatory hostile work environment in an accumulation of incidents involves application of a legal standard to a particular set of facts, summary judgment is proper if "reasonable minds could not differ on the issue." <u>Richardson</u>, 180 F.3d at 437 (citing <u>GAF Corp. v Heyman</u>, 724 F.2d 727, 737 (2d Cir. 1983)); <u>Mendell v. Greenberg</u>, 927 F. 2d 667, 673 (2d Cir. 1990).  That portion of the <u>Richardson</u> case that dealt with plaintiff's experience at the Cayuga Correctional Facility, <u>see</u> 180 F.3d at 440, most closely describes the occurrences on which Plaintiff here bases her claim. Plaintiff "must produce evidence that she was discriminated against because of her race, and this she has not done." <u>Id.</u> (citing <u>Carrero v. New York City Housing Authority</u>, 890 F.2d 569, 580 (2d Cir.1989) (reiterating that conduct complained of must have been prompted by victims's status)).

      Defendants' claim of qualified immunity is tested by whether they could reasonably have

believed that their conduct, as asserted by Plaintiff, viewed objectively did not violate Plaintiff's right to be free from workplace discrimination creative of a hostile work environment. It is not disputed that Plaintiff was entitled to a workplace free of such discrimination, a right clearly established in 2000-01.  Defendants rely on the premise that on the facts asserted by Plaintiff, their actions could not be found to be unreasonable but rather were reasonable. As discussed above, considered individually and cumulatively, defendants' conduct, as described by Plaintiff, is not viewed as creating a genuine issue of material fact as to any violation of Plaintiff's right to be free of a discrimination based hostile work environment. If that is not regarded as legally entitling defendants to summary judgment it is of such dubious quality as a basis for a finding of such an environment, it is found to be so lacking in severity as to preclude a finding that defendants, or either of them, could not reasonably be found to have acted in a manner that was legally unreasonable with respect to her constitutional right. In effect, measured against the constitutional standard, defendants' conduct, viewed objectively, cannot be found to be other than legally reasonable.

As there is no evidence that defendants acted jointly, the conduct of each must be judged independently. What Plaintiff attributes to each cannot be found to have been unreasonable as measured by the constitutional standard under which she was entitled to objectively reasonable conduct by defendants to avoid creating a discriminatory hostile work environment. O'Bert ex. rel. Estate of O'Bert v. Vargo, 331 F.3d 29 (2d. Cir. 2003). Defendants' burden of proving a basis for their claim of qualified immunity, giving full credit to Plaintiff's evidence and the benefit of all inferences in her favor, clearly shows that a jury could not find their conduct, or that of either of them, individually or cumulatively, to be other than reflective of a reasonable belief

on the part of each that their conduct did not violate Plaintiff's constitutional rights. Gottlieb v. County of Orange, 84 F.3d 511, 518 (2d Cir. 1996); Beardsley v. Webb 30 F.3d 524, 530 (4th Cir. 1994). Their conduct has not been shown to have violated "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982).

**V.     Conclusion**

For the foregoing reasons, Plaintiff is found not to have offered evidence demonstrative of a genuine issue of material fact on the issue of liability as she claims and defendants are found to be entitled to summary judgment as a matter of law. Defendant's motion is granted.

SO ORDERED.

Dated at New Haven, Connecticut this  9th  day of August, 2005.


                                           /s/
                                    Peter C. Dorsey
                                    United States District Judge